IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARRY R. IVERSON, DAWN M. IVERSON, GEORGE
HOWELL III, GH HEATING & AIR LLC, on behalf of
themselves and all others similarly situated,

|  |  |
|---|---|
| Plaintiffs, | OPINION and ORDER |
| v. | 23-cv-718-jdp |
| J. DAVID TAX LAW, LLC, | |
| Defendant. | |

---

The plaintiffs in this proposed class action were clients of defendant J. David Tax Law, LLC. They contend that J. David failed to help them with their tax debts as promised, charged them an unreasonable fee, and lied about the firm's qualifications. The complaint asserts claims under Wisconsin law for malpractice, "unreasonable and illegal fees," and violations of Wis. Stat. § 100.18 (the unfair-trade-practices statute).

J. David previously moved to dismiss the claim for unreasonable fees for failure to state a claim. In the same motion, it moved to strike plaintiffs' class allegations on the other two claims. Both sides assumed in their briefing that Wisconsin law governs plaintiffs' claims. But after the parties completed briefing, the court determined that the parties' arbitration agreement was governed by a Florida choice-of-law provision. So the court directed the parties to show cause why the Florida choice-of-law provision should not apply to plaintiffs' claims, and, if it does apply, how the choice of law affects the claims in this case. Dkt. 33.

As explained more fully below, the court concludes that choice of law makes no difference to plaintiffs' claim about "unreasonable and illegal fees." Under either Wisconsin or Florida law, plaintiffs have not stated a claim, so the court will dismiss that claim. As for the

claims for malpractice and violations of the unfair-trade-practices statute, plaintiffs have not shown that the court should disregard the choice-of-law provision, so the court will apply Florida law to those claims. The parties do not identify any significant differences between the two states' laws regarding malpractice and unfair trade practices, so it is not necessary for plaintiffs to file an amended complaint.

This leaves the question whether to strike plaintiffs' class allegations on the malpractice and unfair-trade-practices claims. There are fair questions about whether plaintiffs will be able to show that their claims should be certified for class treatment. Claims like fraud and malpractice often raise individualized questions. But it is unusual to seek a class determination at the pleading stage, and plaintiffs' burden at that stage is low. J. David's only argument is that plaintiffs' claims include elements of causation and damages, so it will be impossible for plaintiffs to meet the requirements for class certification. The Court of Appeals for the Seventh Circuit has rejected that argument, so the court will deny J. David's motion to strike. J. David may renew its objections if and when plaintiffs file a motion for class certification.

Also pending is J. David's motion to stay discovery pending its motion to dismiss and strike. Dkt. 40. This order moots the motion to stay.

ANALYSIS

This order addresses three issues: (1) whether plaintiffs' claims are governed by Wisconsin or Florida law; (2) whether plaintiffs' claim for "unreasonable and illegal fees" states a claim upon which relief may be granted; and (3) whether the court should strike plaintiffs' class allegations for their malpractice and unfair-trade-practices claims.

## A.  Choice of law

The parties' agreement states that "all disputes" between the parties are governed by Florida law. Dkt. 1-1, at 5; Dkt. 33, at 8. Plaintiffs do not dispute that the choice-of-law provision applies on its face to all the claims in this case. But plaintiffs contend that the provision is unenforceable because their claims "implicate important public policies in Wisconsin." Dkt. 37, at 5.

Plaintiffs rely on a principle that dates back to *Bush v. National School Studios, Inc.*, which held that Wisconsin courts may not enforce a choice-of-law provision "at the expense of important public policies of a state whose law would be applicable if the parties['] choice of law provision were disregarded." 139 Wis. 2d 635, 642, 407 N.W.2d 883, 886 (Wis. 1987). *Bush* did not define what an "important" public policy is, but the court identified as examples "statutes or common law which make a particular type of contract enforceable, e.g., usury laws, or which make a particular contract provision unenforceable, e.g., laws prohibiting covenants not to compete, or that are designed to protect a weaker party against the unfair exercise of superior bargaining power by another party." 407 N.W.2d 883 at 887.

In this case, neither side cites any authority regarding whether claims for malpractice, violations of Wis. Stat. § 100.18, or "unreasonable and illegal fees" embody important public policies within the meaning of *Bush*. The absence of such authority counsels against disregarding the choice-of-law provision, for two reasons.  First, the Wisconsin Supreme Court has recognized that "[e]very law, whether statutory or common, is—at some level—an embodiment of policy," but the category of laws that embody "important" public policies is "narrowly focused." *American Family Mutual Insurance Company v. Cintas Corporation No. 2*, 2018 WI 81, ¶ 16, 383 Wis. 2d 63, 914 N.W.2d 76. Second, the general rule is that federal courts

3

sitting in diversity should be hesitant to expand state-law to cover new matters not previously addressed by the state courts. *King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997).

For the purpose of this opinion, the court will assume that plaintiffs' claims implicate important public policies under Wisconsin law. But this assumption does not help plaintiffs.

As for plaintiffs' claim for "unreasonable and illegal fees," the court concludes that plaintiffs have not stated a claim upon which relief may be granted, even if the court applies Wisconsin law to that claim, for the reasons discussed in the next section. As for plaintiffs' claims for malpractice and violations of § 100.18, Florida also recognizes common-law malpractice claims and statutory claims for unfair trade practices. *See Miller v. Finizio & Finizio, P.A.,* 226 So. 3d 979, 982 (Fla. App. 4 Dist. 2017) (setting forth elements for legal malpractice); *DFG Group, LLC. v. Stern*, 220 So. 3d 1236, 1238 (Fla. App. 4 Dist. 2017) (setting forth elements of unfair-trade-practices claim under Fla. Stat. § 501.204). The question under *Bush* is not simply whether Wisconsin law embodies an important public policy, but whether applying another state's law would be "at the expense of" such a policy. 407 N.W.2d at 886. Plaintiffs do not identify any meaningful differences between Wisconsin and Florida law on these claims, and they do not explain how applying Florida law would undermine any important public policies embodied in Wisconsin law.

So the court will apply Florida law to the malpractice and unfair-trade-practices claims. It is unnecessary for plaintiffs to replead their malpractice and unfair-trade-practices claims under Florida law because plaintiffs are required to plead facts, not law, so the references to

Wisconsin law may be disregarded. *See Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 12 (2014); *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.,* 900 F.3d 529, 540–41 (7th Cir. 2018).[1]

### B. Motion to dismiss for failure to state a claim

Plaintiffs allege that J. David required them to pay a non-refundable, advance fee for tax services. Plaintiffs contend that the fee was "unreasonable and illegal" because it is not permitted under Wisconsin Supreme Court's Rules of Professional Conduct for Attorneys. Plaintiffs say that the fee does not qualify as a "retainer" under Rule 20:1.0(mm) "because it was specifically not solely [sic] to secure J. David's availability but rather for legal services to be later performed," and it does not qualify as an "advanced fee" under Rule 20.1.0(ag) "because it was purportedly earned when paid." Dkt. 1-1, ¶¶ 30–31. Rather, plaintiffs say that the fee was "unearned," so J. David should have held the fee in a trust account as required by Rule 1.5(f), but it failed to do so. *Id.* ¶¶ 32–33. Plaintiffs seek a refund of the fee. *Id.* ¶ 35.

J. David moves to dismiss this claim for failure to state a claim upon which relief may be granted. The question on a motion to dismiss is whether the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the

---

[1] J. David does not move to dismiss plaintiffs' individual claims for malpractice or unfair trade practices, and it does not contend that plaintiffs' allegations do not state a claim under Florida law. J. David does state in one of its briefs that Florida's statute of limitations for these claims is shorter than Wisconsin's statute of limitations and that it is "unclear" from plaintiffs' complaint whether the claims are timely under the Florida limitations period. Dkt. 38, at 17. It is true that plaintiffs' complaint does not specify all relevant dates, but the statute of limitations is an affirmative defense, so plaintiffs are not required to plead that issue. *Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014). J. David does not contend that plaintiffs' allegations affirmatively show that that any claim is untimely, so the court does not consider that issue.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As J. David points out, "the Supreme Court Rules do not provide an independent basis for civil liability, and do not create any presumption that a legal duty has been breached." *Williams v. Rexworks, Inc.*, 2004 WI App 228, ¶ 20, 277 Wis. 2d 495, 691 N.W.2d 897. That principle is reflected in the preamble to the rules themselves and has been confirmed by the Wisconsin Supreme Court. *See Yorgan v. Durkin*, 2006 WI 60, ¶ 25 n.8, 290 Wis. 2d 671, 715 N.W.2d 160.

Plaintiffs say that they are not relying on the Supreme Court Rules for their cause of action. Rather, plaintiffs say that they are bringing a claim for "disgorgement of unreasonable attorney fees," and they cite *Maynard Steel Casting Co. v. Sheedy*, 2008 WI App 27, 746 N.W.2d 816, 307 Wis. 2d 653, for the proposition that courts may rely on the Supreme Court Rules to determine what an unreasonable fee is.

*Maynard* is not instructive. In that case, the court recognized its "inherent power to determine the reasonableness of attorney's fees and to refuse to enforce any contract that calls for clearly excessive or unreasonable fees." *Id.* ¶ 5 (quoting *Herro, McAndrews and Porter, S.C. v. Gerhardt*, 62 Wis.2d 179, 182, 214 N.W.2d 401 (1974)). In evaluating that claim, the court looked to some of the factors in the Supreme Court Rules governing reasonableness of fees. But the claim in *Maynard* was about fees that exceeded the value of the lawyer's services. That claim would exist regardless of the Supreme Court Rules; the rules simply provided guideposts for evaluating the value of the lawyer's services.

In this case, plaintiffs have not asserted a claim that the fee J. David charged was unreasonable based on the services it provided, they do not point to any allegations in their

complaint that would support such a claim, and they do not ask for leave to add such allegations. Rather, they contend that the fee was unreasonable solely because it was structured in a way that violates the Supreme Court Rules. *See* Dkt. 30, at 9 ("The gravamen of [the claim for 'unreasonable and illegal' fees] is that these amounts are 'unearned fees' which must be held in trust and cannot be simply taken as 'earned' by the attorneys."). Thus, plaintiffs are relying on the rules to "provide an independent basis for civil liability," which is inconsistent with Wisconsin law. *See Williams*, 2004 WI App 228, at ¶ 20. If the court were to recognize a claim for "disgorgement" based on an allegation that the lawyer violated the Supreme Court Rules in the course of representation, it would eviscerate the limitation on liability established in the rules and Wisconsin case law.

The bottom line is that Wisconsin law does not recognize a disgorgement theory based solely on a violation of the Supreme Court Rules.[2] The remedy for such a violation is to file a complaint with the Office of Lawyer Regulation, not to file a civil lawsuit. The court will grant J. David's motion to dismiss this claim.

## C. Motion to strike class allegations

Plaintiffs seek to certify a class of "all Wisconsin residents who contracted with J. David within the applicable statute(s) of limitations." Dkt. 1-1, ¶ 46. J. David moves to strike the class allegations on the ground that plaintiffs' claims do not involve common questions of law or fact, which is one of the requirements for class certification under Federal Rule of Civil

---

[2] Plaintiffs do not cite any authority suggesting that they would have a claim under Florida law either. Plaintiffs cite a rule in Florida's code of conduct that prohibits illegal and excessive fees, Dkt. 50, at 7 (citing F.S.A. Bar Rule 4-1.5), but they do not respond to J. David's argument that the Florida code of conduct cannot serve as the basis for civil liability, and, in any event, J. David's fee structure is expressly allowed under Florida law. Dkt. 38, at 12–13 (citing R. Regulating Fla. Bar 4—Preamble and R. Regulating Fla. Bar 4-1.5(e)(2)(B)).

Procedure 23. The court has concluded that plaintiffs' claim for "unreasonable and illegal" fees does not state a claim, so it isn't necessary to consider whether to strike the class allegations related to that claim.

It is usually the plaintiffs who move to certify the class under Rule 23, but any party may ask the court to determine whether class certification is appropriate. *Blihovde v. St. Croix County*, 219 F.R.D. 607, 612 (W.D. Wis. 2003). *See also* Fed. R. Civ. P. 23(c)(1) (requiring courts to make certification decision "[a]t an early practicable time" without specifying the party who may request the decision). If the defendant moves to dismiss the class allegations before discovery, as J. David has, the court must evaluate the motion using a standard similar to that of Federal Rule of Civil Procedure 12(b)(6), asking whether the plaintiffs' allegations are sufficient to show that it is plausible that the plaintiffs will be able to satisfy the Rule 23 requirements after conducting discovery. *Gilbert v. Lands' End, Inc.*, Nos. 19-cv-823-jdp and 19-cv-1066-jdp, 2020 WL 1912003, at *2 (W.D. Wis. Apr. 20, 2020); *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269 (W.D. Wis. 2013).

When evaluating whether there are common questions, the court begins with the elements of the underlying claims. *McFields v. Dart*, 982 F.3d 511, 515 (7th Cir. 2020); *Santiago v. City of Chicago*, 19 F.4th 1010, 1016–17 (7th Cir. 2021). A claim for malpractice has three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of loss to the client. *Miller*, 226 So. 3d at 982. A claim under Fla. Stat. § 501.204 (the unfair-trade-practices act) also has three

elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *DFG Group*, 220 So. 3d at 1238.[3]

A common question is one that is capable of class wide resolution and that is "central to the validity of each claim." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). Stated another way, "the key to commonality is . . . the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 865 (7th Cir. 2018) (internal quotation marks omitted). "[E]ven a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

In their complaint, plaintiffs identify what they say are six common questions:

    a)  Whether J. David's practice of agreeing to charging, collecting, and handling (or mishandling) "non-refundable fees" is permitted by law;

    b)  Whether J. David misrepresented to Wisconsin Consumers that they were a law firm with attorneys actually licensed in Wisconsin;

    c)  Whether J. David misrepresented to Wisconsin Consumers that they were a law firm with attorneys capable and qualified to advise clients with respect to Wisconsin law;

    d)  Whether clients are entitled to attorney fee arbitration pursuant to Wisconsin law;

    e)  Whether the fee and other provisions in J. David's engagement agreements are void or otherwise unenforceable as against public policy;

    f)  What the applicable standard(s) of care applicable to J. David's service was; whether J. David breached the applicable standard(s) of care; and whether and to what extent such breaches caused damages to J. David's clients.

---

[3] Both sides assume that the Florida choice-of-law provision in plaintiffs' agreement with J. David is also in the agreement with potential class members, so the court will make the same assumption.

Dkt. 1-1, ¶ 51.

Plaintiffs do not match up their common questions with particular claims. But questions a) and e) are related to the dismissed claim for unreasonable and illegal fees, so the court need not consider those. Question e) also refers to "other" provisions that may be unenforceable, but plaintiffs have not asserted any other clams based on an unenforceable provision, so that cannot be a common question.

Question c) is whether J. David misrepresented that its lawyers were competent to advise clients on Wisconsin law. Plaintiffs do not explain what they mean by this. The only potential example plaintiffs identify in their complaint is that J. David failed to comply with a deadline for appealing an administrative decision that was adverse to the Iversons. Dkt. 1-1, ¶ 21. But that question is unique to the Iversons. Plaintiffs do not allege that J. David missed a deadline for Howell, GH Heating & Air, or any other potential class member, and plaintiffs identify no other issue of Wisconsin law that J. David was uninformed about. So Question c) is not a common question under Rule 23.

Question d) is about arbitration, not one of plaintiffs' claims, so it is not central to the validity of a claim, and therefore not a common question. Question f) is simply a summary of the elements for a malpractice claim. Those are elements that every plaintiff will have to prove, but commonality is not shown simply because all class members are raising the same claim. *Lacy*, 897 F.3d at 865. Rather, the question is whether an issue that "drive[s] the resolution of the litigation" can "generate common *answers*" across the class. *Id.* (emphasis added). Simply stating that all class members are asserting a malpractice claim does not address whether an important issue for that claim will have a common answer across the class.

This leaves Question b): whether J. David misrepresented that its attorneys were licensed in Wisconsin. I understand plaintiffs to contend that this is a common question both for plaintiffs' unfair-trade-practices claim and for their malpractice claim because the misrepresentation is relevant to the unfair-trade-practices statute, and the inability to practice law in Wisconsin is relevant to the malpractice claim. J. David says that there is no commonality because both of plaintiffs' claims would require individual proof of causation and damages.

There is no categorical rule that class certification is inappropriate in cases involving individual questions of causation and damages. For example, the court of appeals held that there was a common question in *Suchanek v. Sturm Foods, Inc.*, a case about false advertising. 764 F.3d 750, 759–60 (7th Cir. 2014). The plaintiffs alleged that a coffee-pod seller's labels misled customers into believing that the product was primarily fresh-ground coffee when it fact the product was 95 percent instant coffee. *Id.* at 753. The court concluded that the common question was whether the packaging was likely to mislead a reasonable consumer. *Id.* The court acknowledged that there would be individual questions of causation and damages, but those differences did not necessarily preclude class certification. *Id.* at 759–61.

The court of appeals has made similar observations in other cases. *See, e.g., McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015) ("Although proximate cause is necessarily an individual issue, we have explained that the need for individual proof alone does not necessarily preclude class certification."); *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("The possibility that individual hearings will be required for some plaintiffs to establish damages does not preclude certification."); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("While consumer fraud class actions present problems that courts must carefully

consider before granting certification, there is not and should not be a rule that they never can be certified."). J. David does not distinguish or even acknowledge these cases in its briefs.

Under *Suchanek*, plaintiffs have identified a common question on both of their remaining claims. On the unfair-trade-practices claim, the common question is whether J. David falsely represented that its lawyers were licensed to practice in Wisconsin, and on the malpractice claim, the common question is whether J. David fell below the standard of care by representing Wisconsin clients without being licensed to practice in the state. In the context of a motion for class certification, plaintiffs will have to come forward with evidence showing that J. David did, in fact, make those representations to the proposed class members and that its lawyers were not licensed to practice in Wisconsin. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). But that is not required at the pleading stage.

Plaintiffs will also have to meet all the other Rule 23 requirements, including that common questions "predominate" over individual questions and that a class action is "superior" to other methods of adjudicating the case. Fed. R. Civ. P. 23(b)(3). Relevant considerations may include whether potential damages on individual lawsuits would be significant enough to sustain an individual lawsuit and the difficulty of determining individual causation and damages issues. *Suchanek*, 764 F.3d at 761. The ultimate question will be whether "classwide resolution would substantially advance the case." *Id.* The court does not consider those issues now because J. David's only argument is that individual issues of causation and damages necessarily preclude class certification. That contention is inconsistent with circuit law, so the court will deny J. David's motion to strike the class allegations related to the unfair-trade-practices and malpractice claims. J. David is free to renew its arguments about commonality on a more developed record.

ORDER

IT IS ORDERED that:

1.  Defendant J. David Tax, LLC's motion to dismiss plaintiffs' claim for "unreasonable and illegal fees," Dkt. 38, is GRANTED, and the claim is DISMISSED.

2.  J. David's motion to strike the class allegations, Dkt. 38, is DENIED.

3.  J. David's motion to stay, Dkt. 40, is DENIED as moot.

Entered August 30, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

13