IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LARRY R. IVERSON, *et al.*,

                    Plaintiffs,

  v.

J. DAVID TAX LAW, LLC,

                    Defendant.

OPINION and ORDER

23-cv-718-jdp

---

      Plaintiffs in this proposed class action were clients of defendant J. David Tax Law, LLC. Plaintiffs sued their former firm, claiming defendant engaged in unfair trade practices and committed malpractice by misrepresenting its lawyers' legal qualifications and falling below the standard level of care. Now before the court is plaintiffs' motion to compel defendant to produce information plaintiffs contend is necessary for class certification. Dkt. 51. The court initially stayed briefing on this motion to compel to focus on defendant's motion to dismiss and plaintiffs' motion to amend. The court has now resolved those motions, Dkt. 54 & Dkt. 73, defining the scope of plaintiffs' claims and setting the stage to resolve this discovery dispute. For the reasons below, plaintiffs' motion is GRANTED in part and DENIED in part. Defendant has two weeks from the date of this order to supplement its discovery responses.

BACKGROUND

      Plaintiffs are Wisconsin residents who engaged defendant, a tax law firm in Florida, to represent them in tax-related proceedings. Dkt. 1-1 at 4, 8. Plaintiffs allege that defendant charged unreasonable and illegal fees, committed malpractice, and engaged in unfair trade practices. *Id.* They sued defendant on these legal theories and asserted class action allegations.

*Id.* at 2, 12–17. Defendant removed this case from Wisconsin state court to this court under 28 U.S.C. §§ 1446 and 1332(d). Dkt. 1 at 1.

The court has since ruled on two motions that affect the scope of the case. The court granted defendant's motion to dismiss plaintiffs' claim for unreasonable and illegal fees, denied defendant's motion to strike the class allegations, and allowed plaintiffs to proceed on their two remaining claims. Dkt. 54 at 11–13. In doing so, the court identified a common question for each. *Id.* at 12. On the unfair-trade-practices claim, the common question is whether defendant falsely represented that its lawyers were licensed to practice in Wisconsin. *Id.* On the malpractice claim, the common question is whether defendant fell below the standard of care by representing Wisconsin clients without being licensed to practice in Wisconsin. *Id.*

The court also denied plaintiffs' motion for leave to amend. Dkt. 73. It rejected plaintiffs' request to add back the previously dismissed claim for unreasonable and illegal fees. *Id.* at 3-5. It also rejected plaintiffs' request to amend the scope of the proposed class to include not just defendant's Wisconsin clients but all of its clientele, ultimately finding the request unnecessary and premature. *Id.* at 2. The court noted that plaintiffs were free to reraise the scope of the class at a later stage in the case. *Id.* ("plaintiffs remain free to change their class definition [at the class certification stage], without amending their complaint[ . . . t]he court will not prohibit plaintiffs from changing their proposed class definition" then).

In and around the briefing on these motions on the pleadings, the parties completed briefing the instant motion to compel. Plaintiffs move to compel responses to six interrogatories and seventeen requests for production, which plaintiffs sorted into five

2

"categories of discovery." Dkt. 51 at 2. Defendant adopted these categories in its briefing as well, so the court uses them here:[1]

> **(A)** J. David's **retention agreements**, including J. David's base/template forms and types of agreements used [RFP 7-12].
>
> **(B) Contact information:** names and addresses (e.g. states of residence) of those clients [RFP 7-11, Int. 10].
>
> **(C) Case information:** case names, numbers, and jurisdictions of any judicial or quasi-judicial or administrative matter or case involved [Int. 10].
>
> **(D) Filings and communications** to third parties made for such clients, such as to WDOR (Wisconsin Department of Revenue), the IRS (Internal Revenue Service), or other taxing authorities [RFP 3-6, Int. 10].
>
> **(E) Invoices** or **accountings** and details of time worked, for the named plaintiffs and each class member [Int. 4, 6-7, RFP 13-17, 19-20].

*Id.* at 4.

After the motion was filed, defendant provided plaintiffs with "supplemental discovery responses and additional documents" including templates of retainer forms it used for Wisconsin clients and information on when they were used and by approximately how many clients. Dkts. 61 at 2, 61-1 at 3–4, 63 at 1. On reply, plaintiffs contend that the supplemental responses and documents did not fully satisfy their requests. Dkt. 63 at 1.

---

[1] Although plaintiffs claim they seek to compel responses to six interrogatories in their brief, the five categories listed only reference four, Nos. 4, 6, 7, and 10. Neither party addresses this. It is not the court's job to parse the discovery requests more thoroughly than the parties do, so the court will resolve the dispute as the parties have briefed it, focusing on the five categories. As discussed further below, the court is granting the motion to compel with respect to Categories A (in part), C, and D only, which the court understands to implicate Interrogatory No. 10 and Requests for Production Nos. 3-6 and 7-12 (in part). To the extent there is any confusion about this, the court expects the parties to meet and confer promptly to resolve any confusion and keep discovery moving briskly.

At the parties' request, the court moved the deadline for Rule 23 class certification motions to January 15, 2025. Dkt. 69.

## LEGAL STANDARDS

This pre-certification discovery dispute concerns the intersection of Federal Rules of Civil Procedure 23 and 26, discussed here.

### A. Rule 23

To successfully certify a class, plaintiffs must satisfy the four requirements of Rule 23(a), known familiarly as numerosity, commonality, typicality, and adequate representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Commonality is not shown by pointing to common questions, but rather explaining how proceeding as a class would "generate common *answers* apt to drive the resolution of the litigation." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (citing *Wal-Mart*, 564 U.S. at 350) (emphasis added). In addition to the four requirements of Rule 23(a), a party must also prove that the common questions predominate over questions affecting only individual members, and that a class action is the superior method for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Finally, the amount in controversy must exceed $5,000,000 for the court to have jurisdiction over the class action. 28 U.S.C. § 1332(d)(2).

### B. Rule 26

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In the class-certification context, information is relevant if it provides answers to the questions common to plaintiffs' claims or if it bears on the other Rule 23(b)(3) requirements.

4

*Drake v. Aerotek, Inc.*, No. 14-CV-216-BBC, 2014 WL 7408715, at *3 (W.D. Wis. Dec. 30, 2014).

ANALYSIS

The court will analyze each of the five categories in turn, but first addresses defendant's reliance on Florida Bar Rule 4-1.6 and its assertions of attorney-client privilege and work-product protections.

**A. Florida Bar Rule 4-1.6**

Defendant argues that Florida Bar Rule 4-1.6 (Rule 4-1.6) precludes it from disclosing documents or information relating to its clients other than plaintiffs. *See* Dkt. 63 at 4, 5, 7, 8, 9, 10. Rule 4-1.6 states in relevant part that "[a] lawyer must not reveal information relating to a client's representation [unless one of the enumerated exceptions apply or] unless the client gives informed consent." But Rule 4-1.6 is a rule of lawyer ethics, not a rule of civil procedure. Florida's district court of appeal made this distinction clear in *Coffey-Garcia v. S. Miami Hosp., Inc.*, opining:

> In Florida, a client's right to have his or her communications with counsel remain confidential derives from two sources which establish somewhat different standards. The right as it pertains to disclosure in judicial and administrative hearings, technically referred to as the 'attorney-client privilege,' is governed by the Florida Evidence Code, codified at section 90.502, Florida Statutes (2013). The right as it pertains to disclosure outside judicial and administrative hearings, technically referred to as 'the rule of client-lawyer confidentiality,' is governed by Rule Regulating the Florida Bar 4–1.6.

194 So. 3d 533, 536 (Fla. Dist. Ct. App. 2016). As in the underlying case in *Coffey-Garcia*, "[b]ecause we are addressing disclosure in the context of a lawsuit, this case is obviously

5

governed by the attorney-client privilege . . . ." *Id.*  In short, Rule 4-1.6 is inapplicable to this discovery dispute.

Even if it were, there is a threshold matter of whether the discovery requests at issue seek the type of confidential information protected by Rule 4-1.6.[2]  Moreover, there is at least one exception to the prohibition to disclosure that facially applies here: "A lawyer may reveal confidential information to the extent the lawyer reasonably believes necessary to . . . respond to allegations in any proceeding concerning the lawyer's representation of the client . . . ." Rule 4-1.6(c)(4).  And the editors' notes to the rule state that "[t]he lawyer must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client."  Fla. Bar R. 4-1.6(c)(4) cmt.  Suffice it to say, defendant's reliance on Rule 4-1.6 does not provide a bar to ordering appropriate discovery in this case.

**B. Attorney-Client Privilege and Work Product Doctrine**

Defendant argues that plaintiffs' discovery requests cover information that is protected by attorney-client privilege, work-product protections, or both.  Neither side provides any guidance as to the choice of law that governs defendant's privilege claims; nor do they explain how choice of law would matter.  Normally, federal common law would govern, except "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  Here, the court has found that Florida law governs plaintiffs' malpractice and unfair-trade-practices claims, Dkt. 54 at 4, so the court applies that law to the privilege questions.

---

[2] The categories of information this order compels—e.g., case numbers, court filings, etc.—is not the sort of information the court generally regards as confidential.

Both the attorney-client privilege and the work-product doctrine can shield information from discovery. The party invoking the privilege to resist discovery bears the burden of establishing that the privilege applies and that it was not waived. *Lender Processing Servs., Inc. v. Arch Ins. Co.*, 183 So. 3d 1052, 1059 (Fla. Dist. Ct. App. 2015). To show the attorney-client privilege applies, the party must show that a communication with an attorney was made for the purpose of obtaining or providing legal services and was intended to be and was kept confidential. Fla. Stats. § 90.502. To claim work-production protection, the party must show that a document or tangible thing was prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative, including that party's agent or attorney. *Snyder v. Value Rent-A-Car*, 736 So. 2d 780, 781 (Fla. Dist. Ct. App. 1999). Attorney-client privilege and work-product protection only shield communications and not the underlying facts contained therein. *Hagans v. Gatorland Kubota, LLC/Sentry Ins.*, 45 So. 3d 73, 76 (Fla. Dist. Ct. App. 2010). Finally, general assertions of privilege or protection are not sufficient; parties must make document-specific claims of privilege or protection when withholding documents. *Nationwide Mut. Fire Ins. Co. v. Harmon*, 580 So. 2d 192, 192 (Fla. Dist. Ct. App. 1991).

Here, defendant has offered only general assertions of privilege. Dkt. 60 at 5, 10–11. Consequently, it cannot carry its burden to establish the existence of any applicable privilege. The court will overrule defendant's blanket assertions of privilege but will allow defendant to assert more particularized privilege claims as discovery progresses. To properly assert the claims over documents, defendant must log any information withheld in a privilege log that complies with Fed. R. Civ. P. 26(b)(5).

**C. Relevancy and Proportionality**

With these threshold issues resolved, the court next conducts the familiar relevancy and proportionality analysis under Rule 26 for each of the five categories of information at issue.

**1. Category A – Retention Agreements**

Plaintiffs seek defendant's retention agreements, arguing that the quantity and the contents of the agreements are relevant to prove numerosity.[3]  Dkt. 51 at 4-5.  Defendant responds that it produced the form agreements it used with Wisconsin clients, as well as their approximate dates and number of clients who signed the agreements, and it contends that those documents are sufficient.  *Id.*

The court mostly agrees with defendant.  Plaintiffs should be able to argue numerosity based on the form agreements and the approximate dates and numbers provided by defendant.  If the content associated with any particular retention agreement (as opposed to a form agreement) bears on a Rule 23 requirement other than numerosity, plaintiffs failed to explain how—e.g., plaintiffs failed to explain how a particular agreement would speak to defendant's alleged false representation that its lawyers were licensed to practice in Wisconsin or to defendant allegedly falling below the standard of care.  Without a clearer connection to the certification question, the court finds that the form agreements and targeted dates and numbers are sufficient for plaintiffs' purposes.

---

[3] Plaintiffs also argue the retention agreements may prove the commonality and typicality of defendant charging "non-refundable fees," as well as the amount in controversy associated with those fees, but these arguments relate only to the claim that was dismissed, Dkt. 54, and the court refused to re-add, Dkt. 73, so it cannot provide a basis for discovery now.  Plaintiffs do not explain whether these fees could be recoverable as a remedy for either of the remaining claims, and the court will not order the agreements on this unargued theory.

That said, in light of the court's ruling on the scope of the potential class—i.e., that it may encompass not only Wisconsin clients, but all clientele, Dkt. 73 at 2—defendant must supplement its responses to provide form agreements, approximate dates, and numbers for all clients from the relevant timeframe.

### 2. Category B – Contact Information

Plaintiffs seek contact information for defendant's clients who have pending or potential matters in Wisconsin. Dkt. 51 at 4; *see* Dkt. 61-1 at 5. Plaintiffs argue that they "have a right to contact members of the putative class" and cite Seventh Circuit cases in support. Dkt. 51 at 5. Defendant contends that contact information is not necessary to prove class certification, and that plaintiffs are merely seeking to identify new clients. Dkt. 60 at 5–6, 8.

This is a close call that turns on the facts of each case, and cases cited by plaintiff say no different. "[I]n some situations access to putative class members' information is unnecessary and even intrusive, such as when a plaintiff is seeking information for numerosity purposes only." *Drake v. Aerotek, Inc.*, No. 14-CV-216-BBC, 2014 WL 7408715, at *2 (W.D. Wis. Dec. 30, 2014). In other cases, "[i]n order to show that th[e] case meets the requirements for certification under Fed. R. Civ. P. 23, and particularly the requirements of typicality and commonality, plaintiff must contact individual class members." *Id.* The court has carefully considered the parties' arguments and the facts of this particular case and finds that plaintiffs have failed to explain why contacting defendant's individual clients is necessary at this juncture.

On reply, plaintiffs suggest that defendant's clients could be witnesses to the representations defendant made. Dkt. 63 at 8. But this information can come from a number

9

of more readily accessible sources, including plaintiffs, the form agreements discussed above, and defendant itself. Plaintiffs also assert that defendant's clients could be putative class members or at the very least interested parties that may waive attorney-client privilege to share information with plaintiff. *Id.* But this fails to explain what information plaintiffs hope to learn from these individuals that would advance the class certification inquiry. Without more, the court will not compel defendant to disclose this information.

### 3. Categories C and D – Case Information, Filings, and Communications

Plaintiffs seek case names, numbers, and jurisdictions of any judicial, quasi-judicial, or administrative case or matter involving Wisconsin clients to prove defendant failed to meet its standard of care. Dkt. 63 at 9. Plaintiffs also seek communications made by or on behalf of defendant's clients to third parties such as the Wisconsin Department of Revenue, the IRS, or "other taxing authorities." Dkt. 51 at 4. Defendant contends it already produced responsive documents for matters involving plaintiffs and argues that additional documents are not relevant to the two common questions. Dkt. 60 at 9–10. On reply, plaintiffs argue this information bears on defendant's care in representing clients by revealing the kind and quality of work defendant did. Dkt. 63 at 7, 9.

The court mostly agrees with plaintiffs on both of these categories. The court has already instructed that plaintiffs will need to answer the common question of "whether J. David fell below the standard of care by representing Wisconsin clients without being licensed to practice in the state," Dkt. 54 at 12, and what cases defendant handled on behalf of its clients and what defendant did to represent those clients bear on this common question. Plaintiffs may analyze these cases and defendant's actions in them for commonality and typicality—e.g., the type of issues handled, the actions taken, and the results—to advance class certification.

Defendant must supplement its responses accordingly. That said, defendant may explore alternative ways to produce this information efficiently and economically—e.g., it could generate lists of the case names and numbers and, if the filings are publicly accessible, direct plaintiffs to the public access.

### 4. Category E – Invoices or Accountings

Finally, plaintiffs seek invoices and accounting details of time worked for named plaintiffs and class members, claiming they are "key to evaluating the reasonableness of attorney fees," Dkt. 51 at 6, but the unreasonable-fee claim was dismissed, Dkt. 54, so this argument fails. Defendant responds that it produced responsive business records for plaintiffs under Rule 33(d), and that providing information about clients other than plaintiffs would violate attorney-client privilege, work product protections, and confidentiality. Dkt. 60 at 10.

The court does not need to reach the privilege or confidentiality concerns because it finds plaintiffs have failed to explain how the requested information would inform the class certification inquiry on the two remaining claims. On reply, plaintiffs argue that the invoices and accounting details are "relevant to the malpractice issues," Dkt. 63 at 7, 9, but this is untimely raised and barely explained. It is not clear how this accounting information would answer either of the two common questions or factor into any of the other Rule 23 requirements. Without a clearer explanation, the court will not compel defendant to produce this information for clients other than plaintiffs.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion to compel discovery, Dkt. 51, is GRANTED in part and DENIED in part in accordance with this opinion.

2. Defendant shall supplement its production of requested documents in line with this opinion within two weeks of the date of this order.

3. The parties bear their own costs in litigating this motion.

Entered November 21, 2024.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge